**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| FRANK X. PANELLA, | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 05-1790 (WHW) |
| | : | |
| MICHAEL O'BRIEN, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

Plaintiff Frank X. Panella ("Plaintiff") filed this complaint on April 1, 2005 against individual defendant Michael O'Brien ("defendant O'Brien") and corporate entities principally owned by him: Northwest Bay Partners, Ltd., Northwest Bay Funding, Inc., D'Amico-Mayfair Corp., 1301 Broadway Corp., 125 Broadway, LLC and Albany Car & Boat Company, Inc ("corporate defendants"). Plaintiff asserts five claims against defendant O'Brien and the corporate defendants (hereinafter collectively "defendants"). In Count One, plaintiff seeks repayment of loans and cash advances in the amount of $1.242 million against O'Brien, Northwest Bay Partners, Ltd., and Northwest Bay Funding, Inc. In Count Two, plaintiff seeks repayment of loans and cash advances and principal balance due from O'Brien, 1031 Broadway Corp., 125 Broadway LLC, D'Amico-Mayfair, Inc. and Albany Car & Boat Company, Inc. Counts Three and Four allege, respectively, misrepresentation and fraud against all defendants. Count Five seeks to pierce the corporate veil against defendant O'Brien. On September 15,

1

NOT FOR PUBLICATION

2005, defendants filed a motion to dismiss or in the alternative transfer to the Northern District of

New York on four separate grounds: Fed. R. Civ. P. 12(b)(2) lack of personal jurisdiction, Fed.

R. Civ. P. 12(b)(7) failure to join a necessary and indispensable party, Fed. R. Civ. P. 9(b) failure

to plead fraud with particularity and *forum non conveniens*, 28 U.S.C. § 1404.  Pursuant to Fed.

R. Civ. P. 78, defendants' motion is decided without oral argument.  Defendants' motion is

denied in part and granted in part.

## I.  BACKGROUND

Plaintiff is a New Jersey resident.  (Compl. at ¶ 3.)  Defendant O'Brien is a New York

resident and a principal owner of all corporate defendants, all New York residents.  Id. at ¶¶ 4-10.

In or about 1993, plaintiff purchased a mortgage for the Brook Hill project – a property

owned by Brook Hill Development, Inc., which is principally owned by non-party Glen Waehner.

Id. at ¶¶ 12-13.  Waehner hired defendant O'Brien to "facilitate and coordinate" construction at

Brook Hill.  Plaintiff, defendant O'Brien and Waehner worked together in an effort to complete

the real estate project.  Id. at ¶ 15.  As the project continued, defendant O'Brien requested that

both plaintiff and Waehner advance additional monies to fund construction expenses.  Id. at ¶ 15,

17.  In the aggregate, plaintiff claims he loaned and/or advanced over $1.8 million to the

defendants, of which approximately $1.242 million is outstanding.  Id. at ¶ 20.

In or about 1998, plaintiff made a cash advance of $350,000 to defendant O'Brien and

Northwest Bay Funding, Inc. to satisfy the mortgage for residential building lots known as Bell

Point Shores.  (Compl. at ¶¶ 20-21.)  Plaintiff claims defendant O'Brien has not transferred the

NOT FOR PUBLICATION

shares of Northwest Bay Funding, Inc. to plaintiff as plaintiff and defendant had agreed upon.  Id.

at ¶ 22.

Plaintiff also alleges he loaned or advanced funds of approximately $310,000 to

defendant O'Brien, 1031 Broadway Corp., 125 Broadway Associates, LLC and/or D'Amico-

Mayfair Corp. for real property located in Albany, New York (" Albany Properties").  Id. at ¶¶

25-26.  Plaintiff claims he has not been repaid these monies.  Id.

## II.  ANALYSIS

### A.  Personal Jurisdiction

Defendants move to dismiss the complaint for lack of personal jurisdiction pursuant to

Fed. R. Civ. P. 12(b)(2).  They claim that they are all residents of New York and they do not

meet the required minimum contacts analysis necessary to confer personal jurisdiction.  (Defs.'

Mot. to Dismiss at 9.)  Defendants argue that plaintiff failed to meet his burden to demonstrate

that each defendant purposefully availed itself of the privileges of conducting business in New

Jersey.  Id. at 11.  Alternatively, they argue that even if minimum contacts are met, personal

jurisdiction would offend traditional notions of fair play and substantial justice.  Id. at 14.

Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts have personal

jurisdiction over non-resident defendants to the extent authorized under the law of the forum

state in which the district court sits." See Sunbelt Corp. v. Noble, Denton & Assocs., Inc., 5 F.3d

28, 31 (3d Cir.1993).  New Jersey's long arm statute provides for personal jurisdiction as far as is

permitted by the Fourteenth Amendment to the United States Constitution. See N.J. Civ. Pract.

NOT FOR PUBLICATION

R. 4:4-4; <u>Carteret Savings Bank, FA v. Shushan</u>, 954 F.2d 141, 145 (3d Cir.1992); <u>DeJames v.</u>

<u>Magnificence Carriers, Inc.</u>, 654 F.2d 280, 284 (3d Cir. 1981).  Accordingly, the question of

whether this Court has jurisdiction over the defendant is determined by federal constitutional

law. <u>See</u> <u>Mesalic v. Fibrefloat Corp.</u>, 897 F.2d 696, 698 (3d Cir. 1990).

The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state

defendant only where "the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." <u>Burger</u>

<u>King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235

(1958)). The plaintiff has the burden to prove that the defendant has purposefully availed himself

of the forum state. <u>See</u> <u>Burke v. Quartey</u>, 969 F. Supp. 921, 924 (D.N.J. 1997).

To prove that the defendant has purposefully availed itself to the forum state, a plaintiff

may rely upon a defendant's specific contacts with the forum state. Personal jurisdiction pursuant

to such contacts is known as specific jurisdiction. Specific jurisdiction is invoked when a claim is

related to or arises of out the defendant's contacts with the forum. <u>See</u> <u>Helikopteros Nacionales</u>

<u>de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984); <u>Dollar Sav. Bank v. First Security Bank of</u>

<u>Utah</u>, 746 F.2d 208, 211 (3d Cir. 1984). A court must first determine whether the defendant had

the minimum contacts with the forum necessary for the defendant to have "reasonably

anticipate[d] being haled into court there." <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444

U.S. 286, 297 (1980) (citations omitted). What constitutes minimum contacts varies with the

"quality and nature of defendant's activity." <u>Hanson</u>, 257 U.S. at 253. In assessing the sufficiency

of minimum contacts for personal jurisdiction, the court must focus on the "relationship among

**NOT FOR PUBLICATION**

the defendant, the forum and the litigation." <u>Keeton v. Hustler</u>, 465 U.S. 770 (1984). Otherwise

stated, there must be at least "a single deliberate contact" with the forum state that relates to the

cause of action. <u>United States Golf Ass'n v. United States Amateur Golf Ass'n</u>, 690 F. Supp.

317, 320 (D.N.J. 1988).[1]

 "Once a defendant raises the issue of personal jurisdiction, the plaintiff then bears the

burden to prove, by a preponderance of the evidence, facts sufficient to establish personal

jurisdiction." <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F.2d 141, 147 (3d Cir. 1992), <u>cert.</u>

<u>denied,</u> 506 U.S. 817 (1992) (<u>citing</u> <u>Time Share Vacation v. Atlantic Resorts, Ltd.,</u> 735 F.2d 61, 65

(3d Cir.1984)). "Moreover, the plaintiff is required to sustain its burden through sworn affidavits

or other competent evidence; at no point may a plaintiff rely on the pleadings alone in order to

withstand an *in personam* jurisdictional attack." <u>Amberson Holdings LLC v. Westside Story</u>

<u>Newspaper</u>, 110 F. Supp. 2d  332, 335 (D.N.J. 2000).  The Court finds that plaintiff meets this

burden.

 Plaintiff demonstrates that all defendants have contact with the forum state sufficient to

establish personal jurisdiction. Plaintiff alleges that defendant O'Brien met with plaintiff,

plaintiff's attorney and plaintiff's accountant or about February 27, 1998 in East Rutherford, New

---

[1] If the plaintiff cannot establish specific jurisdiction, a court may exercise general
jurisdiction over the defendant, if the defendant has maintained "continuous and systematic
contacts" with the forum state. <u>Helikopteros</u>, 466 U.S. at 416. To establish general jurisdiction
the plaintiff must show significantly more than mere minimum contacts with the forum state.
<u>Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 437 (3d Cir. 1987).
Moreover, the facts required to establish general jurisdiction must be "extensive and persuasive."
<u>Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas</u>, 675 F.2d 587, 589 (3d Cir. 1982).
Here, since the parties agree that general jurisdiction is not applicable in this case, the Court need
not address the issue.

**NOT FOR PUBLICATION**

Jersey where defendant O'Brien signed a promissory note presumably for the Albany Properties. (Plaintiff Aff. at 4.)  Plaintiff provides a promissory note to plaintiff signed by defendant O'Brien for $190,000 dated February 27, 1998.  (See Panella Aff. Exh. A p. 5.)  Demonstration of at least one contractual obligation created in the forum state can confer personal jurisdiction.  See McGee v. International Life Ins. Co., 355 U.S. 220, 223 (1957) (affirming personal jurisdiction over a nonresident corporation based on the issuance of one insurance policy to a forum state resident). In addition to signing the promissory note, plaintiff alleges defendant O'Brien attended meetings in New Jersey regarding the Bell Point properties and that defendant O'Brien, accompanied by plaintiff, purchased supplies for the Brook Hill project in Bergen County, New Jersey.  (Panella Aff. at 5.)  The Supreme Court has held that parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King, 471 U.S. at 473 (citing Travelers Health Assn. v. Virginia, 339 U.S. 643, 647 (1950)); see also McGee v. International Life Insurance Co., 355 U.S. at 222-23.  The Third Circuit in Carteret found that purposeful availment necessary for due process was met by the defendant's act of traveling to New Jersey to consult with his client.  954 F.2d at 150.  In the present case, it is immaterial that defendant O'Brien claims he visited Panella to socialize.  As long as business was conducted, as he admits, (O'Brien Aff. ¶ 24), O'Brien purposefully availed himself and his corporations to the privileges of conducting business in the forum state by creating a business relationship with a New Jersey resident and traveling to New Jersey to continue that relationship.

NOT FOR PUBLICATION

Moreover, the miscellaneous provisions section of the executed promissory note provides that "[t]his note shall be construed and governed under the Laws of the State of New Jersey." (Panella Aff. Exh. A p. 4.)  "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process."  Burger King, 471 U.S. at 473 (internal citation omitted).  The choice of law provision gave defendants reasonable notice of being haled into a New Jersey Court and defendants should have foreseen that they might have to defend their conduct in New Jersey.

In any event, plaintiff alleges misrepresentation and fraud against defendants, which may form an additional basis of jurisdiction. To review a motion to dismiss for lack of personal jurisdiction, this Court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." Carteret, 954 F.2d. at 142.  "Personal jurisdiction may be exercised over a non-resident defendant, who, while present in the forum state, makes deliberate misrepresentation during the course of negotiations or other direct oral communications with the plaintiff." Carteret, 954 F.2d at 146 (holding defendant's "act of traveling to New Jersey, where he allegedly committed fraud, suffice[d] for the exercise of personal jurisdiction").  "A tortious act committed within the State constitutes a jurisdictional predicate 'consistent with due process.' . . . Therefore, New Jersey would permit the exercise of personal jurisdiction over a nonresident defendant who committed a single tortious act, whether negligent or intentional, within New Jersey" Id. at 147.

The Court is not persuaded by defendants' argument that plaintiff failed to demonstrate that each defendant meets the minimum contact analysis.  Plaintiff alleges that defendant O'Brien came

NOT FOR PUBLICATION

to New Jersey individually and on behalf of his corporations.  (Compl. ¶ 17.)  Personal jurisdiction

over the corporate defendants is clear through defendant O'Brien's alleged conduct in seeking

financing for the three projects on the corporations' behalf.  With regard to individual liability,

plaintiff charges the defendant O'Brien by piercing the corporate veil.  The theory behind piercing

the corporate veil is that "the corporation is something less than a bona fide independent entity."

Donsco, Inc. v. Casper Corp., 587 F.2d 602, 606 (3d Cir. 1978).  "The effect of piercing a

corporate veil is to hold the owner liable."  Id.  Although Courts have declined to exercise personal

jurisdiction over individuals for acts committed in corporate capacities, corporate officers cannot

shield themselves from jurisdiction when there are sufficient contacts to "confer personal

jurisdiction over the individual defendant" from acts which, if proven, create personal liability. See

Educational Testing Service v. Katzman, 631 F. Supp. 550, 557 (D.N.J. 1986); Aceton v. Vista

Dental Products, No. 05-3847, 2006 U.S. Dist. LEXIS 27854, at *11-14 (D.N.J. May 3, 2006).

"Minimum contacts analysis does not discount a defendant's contacts with the forum simply

because that defendant was acting at the time as agent for another."  See Educational Testing

Service, 631 F. Supp. at 558.  "It would be anomalous, and would defeat the purposes of the law

creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by

means of the corporate entity, when he could not interpose the same shield as a defense against

substantive liability" Id. at 557 (holding alleged tortious conduct of corporation's president may be

used to determine whether court has jurisdiction over the individual defendant independent from

establishing jurisdiction over the corporation).  Because defendant O'Brien's individual acts could

potentially create individual liability, he too is subject to personal jurisdiction.

-8-

NOT FOR PUBLICATION

The Court is also not persuaded by defendants' contention that personal jurisdiction in New Jersey would offend traditional notions of fair play and substantial justice.  Once minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945)); Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir.1998). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980). To determine reasonableness, a court considers the following factors: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.  Id.  Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." Asahi Metal Industry Co.. v. Super. Ct. of Cal., 480 U.S. 102, 116 (1987).

Personal jurisdiction would be reasonable in New Jersey.  Although defendants point out that Albany is more than 100 miles away from New Jersey, travel to New Jersey would not be burdensome nor would it compromise efficiency.  The plaintiff and the state of New Jersey have an interest in protecting New Jersey residents against potential fraud or misrepresentation in business transactions.  There is a significant policy interest among the several States for free-flowing and

 **NOT FOR PUBLICATION**

transparent business relationships and development across state borders.  Because plaintiff

establishes that all defendants meet the requirements of minimum contacts analysis and

purposefully availed themselves to conducting business in New Jersey under New Jersey law, and

because the fair play and substantial justice factors are satisfied by personal jurisdiction in New

Jersey, defendants' motion pursuant to Fed. R. Civ. P.  12(b)(2) is denied.


**B.  Necessary and Dispensable Parties**

   Defendants also move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(7) for

plaintiff's failure to join Glenn Waehner ("Waehner") and Brook Hill Development, Inc. ("Brook

Hill"). (O'Brien Motion to Dismiss 17.)  Defendants claim that Waehner and Brook Hill should be

joined because Waehner is a co-venturer with plaintiff and defendant O'Brien in the Brook Hill

project.  Id.   To decide a 12(b)(7) motion for failure to join a party under Rule 19, the Court must

conduct a two prong analysis.  First, the Court must determine whether a party is necessary under

Rule 19(a).  See Janney Montgomery Scott v. Shepard Niles, 11 F.3d 399, 404 (3d Cir. 1993).  If

feasible, the Court must join a necessary party to assure that the parties in interest have a chance to

affect the outcome and receive the benefit of a final judgment.  Abel v. American Art Analog, 838

F.2d 691, 694 (3d Cir. 1988).  A person or party is necessary under Rule 19(a) if the person or

party is subject to service of process, would not destroy the Court's subject matter jurisdiction and

the following circumstances are met:

> (1) in the person's absence complete relief cannot be accorded among those already
> parties, or (2) the person claims an interest relating to the subject of the action and is
> so situated that the disposition of the action in the person's absence may (i) as a
> practical matter impair or impede the person's ability to protect that interest or (ii)

**NOT FOR PUBLICATION**

> leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed R. Civ. P. 19(a).

Second, if the Court finds a non-party to the action is necessary but joining that party would destroy the Court's subject matter jurisdiction, the Court must decide whether the non-party is "indispensable" under rule 19(b).

> If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); see also Provident Tradesmens B. & T. Co. v. Patterson, 390 U.S. 102 (1968).  The Third Circuit has found that the listed factors in Rule 19(b) "are not exhaustive, but they are the most important considerations in deciding whether to dismiss the action." Gateco, Inc. v. Safeco Ins. Co. of Am., 2006 U.S. Dist. LEXIS 23386, *3-6 (E.D. Pa. Apr. 25, 2006) (citing Gardiner v. V. I. Water & Power Auth., 145 F.3d 635, 640 (3d Cir. 1998)).  If a non-party is found necessary and indispensable but cannot be joined, the action must be dismissed.  See Janney, 11 F.3d at 404.  "Generally a party is not necessary simply because joinder would be convenient, or because two claims share common facts. Otherwise the distinction between compulsory and permissive joinder would be 'meaningless.'" Gateco, at *6.  If a court determines that a party is not

-11-

NOT FOR PUBLICATION

necessary under rule 19(a), the court does not need to analyze the factors listed in Rule 19(b).
<u>Abel</u>, 838 F.2d at 695.

      Neither Waehner nor Brook Hill Development is a necessary party pursuant to Fed. R. Civ.

P. 19(a).  Even if a partnership or joint venture existed between plaintiff, defendant O'Brien and

Waehner, plaintiff has not asserted any claims against the partnership or joint venture.  The Third

Circuit has held that parties are not necessary under Rule 19(a) where "plaintiff is not asserting the

interests of the partnership, but merely his personal entitlement to . . . [his] profit position."  <u>Abel</u>

<u>v. American Art Analog</u>, 838 F.2d 691, 695 (3d Cir. 1988) (finding plaintiff's profit interest was

"readily severable" from other partners).  Similarly, in the present matter, plaintiff seeks to be

repaid by defendant O'Brien and his corporations for monies paid specifically to them.  Plaintiff

does not make any claims against Waehner or Brook Hill Development.  Complete relief may be

accorded without Waehner and Brook Hill's presence, and no party's interests would be left

unprotected.  If plaintiff was awarded damages, defendants would not be subject to double or

inconsistent liabilities. Potential entitlement to an accounting on a meritorious claim for Waehner

or Brook Hill, as defendants claim, would not affect the interests of the current parties in this suit.

Defendant's assertion of claims against plaintiff and Waehner in his New York state court

complaint attached in O'Brien's affidavit have no bearing on this Court.  Accordingly, defendants'

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) is denied.

NOT FOR PUBLICATION

## C.  Pleading with Particularity

Defendants move to dismiss plaintiff's claims of misrepresentation (count III) and fraud

(count IV) for failure to plead with particularity pursuant to Fed. R. Civ. P. 9(b).  They claim that

specific allegations of misrepresentation and fraud must be made against each defendant.

(Defendants' Motion to Dismiss at 26.)  Defendants argue that plaintiff has not met the time, place

and manner requirements nor has plaintiff pled justifiable reliance.  Id. at 27, 29.  The Court notes

that Fed. R. Civ. P. 9(b) does not apply to plaintiff's pleading of negligent misrepresentation,

although negligent misrepresentation requires some measure of specificity.  See In re Cedant Corp.,

191 F.R.D. 331, 337 (D.N.J. 1999); Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d

823, 834 (E.D. Pa. 2001).

Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances

constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other

condition of mind of a person may be averred generally."  "The purpose of Rule 9(b) is to provide

notice of the 'precise misconduct' with which defendants are charged" in order to give them an

opportunity to respond meaningfully to a complaint, "and to prevent false or unsubstantiated

charges."  Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 658 (3d Cir. 1998).  To

satisfy Rule 9(b), a plaintiff must "plead with particularity the 'circumstances' of the alleged

fraud."  Rolo, 155 F.3d at 658.  In other words, plaintiffs must "plead 'the who, what, when,

where, and how: the first paragraph of any newspaper story.'"  In re Advanta Corp. Sec. Lit., 180

F.3d 525, 534 (3d Cir. 1999) (quoting DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.

1990)). Plaintiffs need not, however, plead the 'date, place or time' of the fraud, so long as they use

NOT FOR PUBLICATION

an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Rolo, 155 F.3d at 658 (citing Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984)).  The Third Circuit has cautioned that courts should "apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants."  Rolo, 155 F. 3d at 658 (citing Christidis v. First Pennsylvania Mortg. Trust, 717 F.2d 96, 99 (3d Cir.1983)).

The Court turns to the specific allegations of the complaint in the context of Rule 9(b).  In Paragraph 17, plaintiff claims defendant O'Brien, individually and on behalf of his corporations, traveled to New Jersey to meet with plaintiff for the purpose of obtaining funding for the Brook Hill, Bell Point and Albany Properties projects.  In Paragraph 18, plaintiff alleges that defendant O'Brien told him that the financing he was providing would be used for the Brook Hill Project but the money was ultimately used for defendant O'Brien and his corporations' personal use instead. In Paragraph 30, plaintiff claims he gave money to defendant O'Brien and Northwest Bay Partners for the "express purpose" of paying for costs of completing the Brook Hill and Bell Point projects and in Paragraph 31, plaintiff claims that defendant diverted the money without plaintiff's knowledge.  In Paragraphs 20 and 26, plaintiff alleges he is owed money.  In Paragraphs 44 and 50, plaintiff pleads damages.  These paragraphs specifically provide who made the misrepresentation (defendant O'Brien on behalf of his corporations on the three projects), the misrepresentation made (the money was supposed to be used for the projects), when and where (on defendant O'Brien's trips to New Jersey to conduct business with plaintiff), and harm to the plaintiff (not being repaid).

-14-

NOT FOR PUBLICATION

Plaintiffs meet the "dictates of Rule 9(b)" where they have "alleged the general time frame, fraudulent conduct, . . . [their] reliance on the conduct, and the alleged damages." <u>Bethlehem Steel Corp. V. Fischbach & Moore, Inc.</u>, 641 F. Supp. 271, 276 (E.D. Pa. 1985).  Here, although plaintiff does not provide the dates or times of the alleged misrepresentations, defendants are on notice of the conduct they must defend because visits to New Jersey for the purpose of procuring funding injects the precision required to meet the 9(b) standard.  <u>See</u> <u>Republic Envtl. Sys., (PA) v. Reichhold Chems.</u>, No. 93-6092, 1994 U.S. Dist. LEXIS 3680, at *3 (E.D. Pa. Mar. 28, 1994) (holding plaintiff's claim was particularized enough to put defendant on notices of the alleged fraud charged even though plaintiffs did not provide exact details of which chemicals were in the wastewater).

In Paragraph 32, plaintiff lists transactions that show payments to defendant O'Brien and his various corporations.  This list provides a measure of specificity regarding the content of the misrepresentation and a basis for plaintiff's allegation that money was misappropriated.  <u>See</u> <u>DiVittorio v. Equidyne Extractive Indus.</u>, 822 F.2d 1242, 1248 (2d Cir. 1987) (holding rule 9(b) requirement satisfied upon information and belief alleging that defendants "failed to maintain segregated finances for their various ventures and actually siphoned the limited partners' monies into other, financially ailing ventures.").  This list also provides defendants notice of the actions subject to plaintiff's misrepresentation and fraud claims.  <u>See</u> <u>Seville Indus. Machinery Corp. v. Southmost Machinery Corp.</u>, 742 F.2d 786, 791 (3d Cir. 1984) (holding rule 9(b) satisfied in complaint by providing detailed list of the machinery that was subject to fraud).  Although this list is not comprehensive because it only covers a six-month period, plaintiff does not have to know or

-15-

**NOT FOR PUBLICATION**

plead every detail of the fraud.  See Parker Hannifin Corp. v. Bradshaw, No. 91-1251, 1993 U.S.

Dist. LEXIS 348 at *5 (E.D. Pa. Jan. 5, 1993).

Notwithstanding the Court's conclusion that plaintiff has adequately plead the who, what

when, and where with the specificity required under Rule 9(b), the Court finds that plaintiff has

failed to plead justifiable reliance with the requisite particularity and will therefore dismiss Counts

Three and Four without prejudice and with leave to amend his complaint.  As this Court has

recently noted, "[t]he five elements of common law fraud [under New Jersey law] are: (1) a

material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the

defendant of its falsity; (3) an intention that the other person rely on it; (4) *reasonable reliance*

*thereon by the other person*; and (5) resulting damages." Frick v. Novartis Pharmaceuticals Corp.,

2006 WL 1344316 at *1 (D.N.J. May 16, 2006) (quoting Gennari v. Weichert Co. Realtors, 148

N.J. 582, 610 (1997)) (emphasis added).  An allegation of negligent misrepresentation under New

Jersey law also requires plaintiff to plead reasonable reliance.  Konover Const. Corp. v. East Coast

Const. Services Corp., 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (quoting McClellan v. Feit, 376

N.J. Super. 305, 313, (N.J. App. Div. 2005) (citation omitted)) ("To establish a claim for negligent

misrepresentation, a plaintiff must show '[a]n incorrect statement, negligently made and *justifiably*

*relied on*,' which results in economic loss.") (emphasis added).

As case law makes clear, in conjunction with rule 9(b), plaintiff must plead with some

specificity the details regarding his reasonable or justifiable reliance on the allegedly fraudulent

statement or negligent misrepresentations.  A thorough review of plaintiff's complaint uncovers no

detailed allegations regarding his alleged reliance on the fraudulent misrepresentations of

-16-

NOT FOR PUBLICATION

defendant O'Brien.  Instead, plaintiff claims in a conclusory fashion without stating direct actual reliance that "Panella made the cash advance in order to satisfy the Troy Savings Bank mortgage for the purposes of acquiring title to the Bell Point lots, with the understanding that he would then obtain a first mortgage position on the Bell Point lots either individually, or through an entity owned and controlled by him." (Compl. at ¶ 21.)  Likewise, plaintiff states "O' Brien did knowingly and intentionally provide false information to Panella with the express intent of defrauding Panella, knowing that Panella would rely on this information as being true and accurate in determining whether to make loans and cash advances for the various projects. Id. at ¶ 47.; see also id. at ¶ 43.  In none of these allegations does plaintiff specify or allege that he actually relied on defendant's alleged misstatements.  Instead, all perceivable references to reliance throughout the complaint relate to plaintiff's general statements that defendant made his misstatements knowing that plaintiff would somehow rely on them.  This does not amount to pleading plaintiff's own reliance on the alleged misstatements.  Instead, it suggests only what defendant allegedly intended by his misrepresentations.

While plaintiff's failure to specify his own reliance on any alleged misstatements by defendants amounts to nothing more than a mere pleading technicality, such failure still amounts to a failure to plead with the requisite specificity and subjects Counts III and IV to dismissal.  See Olshansky v. Sutton, 2001 WL 99857, at *3 (S.D.N.Y. Feb. 6, 2001) (noting that plaintiff's conclusory statements were insufficient to "plead reliance on the alleged misrepresentations and omissions" and "[p]urely as a matter of pleading, the complaint is deficient in this regard"); see also The Golden Budha Corp. v. Canadian Land Co. of Amer., N.V., 931 F.2d 196, 202 (2d Cir.

**NOT FOR PUBLICATION**

1990) (noting that claim for fraud "requires . . . actual reliance to his injury by the defrauded party in ignorance of the falsity" and finding that "necessary allegations are totally absent from the complaint"); In re Motel 6 Sec. Litig ., 1997 WL 154011, at *5-6 (S.D.N.Y. Apr. 2, 1997) (holding that fraud claim must be dismissed because plaintiff failed to allege facts to support claim that they relied on defendants' omissions).

Accordingly, defendants' motion to dismiss Counts III and IV of the complaint for failure to plead with particularity is granted without prejudice. Plaintiff is afforded an opportunity to amend these Counts to allege, if so, his actual reliance on the alleged misstatements of defendants.

**D. Forum non conveniens**

As an alternative argument, defendants urge the Court to dismiss plaintiff's complaint on *forum non conveniens* grounds. At the threshold, in addressing a defense of *forum non conveniens,* the court must determine whether an adequate alternative forum has jurisdiction to resolve the dispute. Lony v. E.I. Du Pont de Nemours & Co., 886 F.2d 628, 632 (3d Cir. 1989). Next, the court should weigh the "private interest" and "public interest" factors enumerated in Gulf Oil v. Gilbert, 330 U.S. 501 (1947). The private interest factors to be considered include:

> relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make a trial of a case easy, expeditious and inexpensive.

Lacey v. Cessna Aircraft Co., 932 F.2d 170, 180 (3d Cir. 1991) (citing Gulf Oil, 330 U.S. at 508).

In addition, "in most cases, the plaintiffs forum choice is a paramount consideration in any

NOT FOR PUBLICATION

determination of a transfer request, and given great weight in a motion to transfer venue." Park Inn

Intern'l, LLC v. Moody Enters., Inc., 105 F. Supp. 2d 370, 377 (D.N.J. 2000).

> The public interest factors to be considered include:

> the administrative difficulties flowing from court congestion; the 'local interest in
> having localized controversies decided at home'; the interest in having the trial of a
> diversity case in a forum that is at home with the law that must govern the action;
> the avoidance of unnecessary problems in conflict of laws, or in application of
> foreign laws; and the unfairness of burdening citizens in an unrelated forum with
> jury duty.

Lacey, 932 F.2d at 180 (citing Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6).

Although the burden is on the defendant to prove that these factors weigh heavily in favor

of dismissal, see id., "the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or

'oppress' the defendant[s] by inflicting . . . expense or trouble not necessary to [its] own right to

pursue [its] remedy." Gulf Oil, 330 U.S. at 508.  Overall however, defendant must show that the

balance of the public and private factors "tips decidedly in favor of trial in the foreign forum" and

if  "when added together, the relevant private and public interest factors are in equipoise, or even if

they lean only slightly toward dismissal, the motion to dismiss must be denied." Lacey, 932 F.2d at

180.

Turning to the public and private factors applied to this case, the Court finds that dismissal

is not warranted.  To begin, the Court highlights its previous discussion of the forum selection

clause in the miscellaneous provisions section of the executed promissory note between plaintiff

and defendants.  That provision stated that the note would be governed by New Jersey law.  At

least one court has noted that the existence of a forum selection clause has essentially the same

effect on the issue of the appropriateness of venue as it does on the question of jurisdiction.  See,

NOT FOR PUBLICATION

e.g.,  Provident Mutual Life Ins. Co. of Phila. v. Bickerstaff, 818 F. Supp. 116, 119 (E.D. Pa.

1993).  While the existence of the forum selection clause is not dispositive of the issue of proper

venue, it is entitled to "substantial consideration."  Jumara v. State Farm Ins. Co., 55 F.3d 873, 880

(3d Cir. 1995).

       In addition a court must generally defer to the plaintiff's choice of forum, particularly when

the plaintiff resides in the forum state.  See Piper, 454 U.S. at 255-56.  In conjunction with the

forum selection clause in the note between plaintiff and defendant O'Brien, this factor weighs

heavily in plaintiff's favor.  As outlined by the Gulf factors, the court must also consider the

relative access and availability of proofs and witnesses.  The Court notes that New Jersey is just as

inconvenient for defendant as New York would be inconvenient to plaintiff, perhaps more so given

plaintiff's age and physical condition.  Defendants also claim that a majority of the documents and

witnesses are located in New York and that this factor weighs in favor of transfer.  The Court is not

persuaded by this argument.  This complaint arises from the alleged misrepresentations made by

defendant O"Brien on behalf of defendant corporations to plaintiff in the state of New Jersey.  At

its most basic, this case boils down to what OBrien said to plaintiff in New Jersey, a dispute that is

unlikely to involve significant documents and witnesses from out of state.  Even if such documents

or witnesses are required, their presence is not enough to tip the balance of all the relevant factors

in defendant's favor.  Frankly, the Court can foresee no significant witnesses apart from plaintiff

and defendant O'Brien, and as discussed, defendant O'Brien is subject to this court's jurisdiction.

Overall, the Court finds that the private factors weigh in favor of plaintiff.

**NOT FOR PUBLICATION**

As for the public factors, many of which were considered in this Court's analysis of traditional notions of fair play and substantial justice in the context of personal jurisdiction, defendants fail to demonstrate substantial factors that would weigh in favor of dismissal or transfer. The docket of the District of New Jersey is no more or less conducive to an expeditious resolution of this matter than the docket of the Northern District of New York. The state of New Jersey and its residents have an interest in protecting themselves against defendants who engage in potential fraud or misrepresentation in business transactions. Finally, as discussed, in addressing the choice of law factor, it appears that the parties contracted to make New Jersey law controlling. This factor weighs heavily in favor of venue in New Jersey as opposed to New York  Defendants' request for dismissal on *forum non conveniens* grounds is denied.[2]

**s/ William H. Walls, U.S.D.J.**

---

[2]  The Court notes that the doctrine of *forum non conveniens* is typically invoked by a defendant only when the appropriate alternative forum is a state or foreign court.  When defendant concedes that another appropriate federal district court forum exists, the motion for dismissal on *forum non conveniens* grounds is best treated as a motion to transfer.  See Horowitz Finance Corp. v. Vacation Time of Hilton Head Island, Inc., 1991 U.S. Dist. LEXIS 13375, at *19 (D.N.J. Sept. 23, 1991).  Because the Third Circuit directs district courts to a list of private and public interest factors that closely mirror those in Gulf Oil in considering a motion to transfer and because the Court has rejected these factors in considering defendants *forum non conveniens* argument, defendants motion to transfer must likewise be denied. See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (factors considered on a motion to transfer venue include plaintiff's choice of forum, the defendant's preference, where the claim arose, the convenience of parties and witnesses, and the location of books and records, as well as relative court congestion, any local interest in deciding localized controversies, and public policies of the fora).